T.C. Memo. 2009-304

UNITED STATES TAX COURT

KHADIJA DUMA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11042-07.　　　　　　　　Filed December 23, 2009.

Khadija Duma, petitioner.

<u>Anne W. Bryson</u>, <u>Douglas Dahl</u>, and <u>Scott Hovey</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, <u>Judge</u>:  This case is before the Court on
petitioner Khadija Duma's petition, pursuant to section 6213(a),[1]

---

[1]Except as otherwise noted, all section references are to
the Internal Revenue Code (26 U.S.C.), and all Rule references
are to the Tax Court Rules of Practice and Procedure.

for redetermination of her Federal income tax deficiencies for 2003 and 2004, which the Internal Revenue Service (IRS) determined to be as follows:

|      |            | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 2003 | $18,548 | $2,852 | $1,965 | $310 |
| 2004 | 11,953 | 2,507 | 1,059 | 317 |

Respondent has conceded certain issues that contributed to those deficiencies,[2] and Ms. Duma has conceded others,[3] so that the remaining issues we must decide are:

1.  Whether in 2003 Ms. Duma received wages from her employer in the amount of $92,798 (rather than $66,000, as she alleges). We find that she received wages in the larger amount.

---

[2]Respondent concedes that Ms. Duma is entitled to mortgage interest deductions of $23,491 in 2003 and $18,043 in 2004; that she is not liable for the section 6654 estimated tax addition to tax for 2003; that she paid $450 in student loan interest for 2004; and that in 2004 she received Social Security benefits of $16,288 (not the $27,020 determined in the notice of deficiency, nor a larger amount of $50,564 which respondent's records allegedly stated).

[3]Ms. Duma does not dispute: that in 2003 she received $12 in interest income from her credit union; that in 2004 she received dividends of $45; that in 2004 she received pension/annuity payments of $1,163 from Fidelity Investments; that in 2004 she received wages of $9,693 from her employer; and that in 2004 she received disability income of $16,288 from the Social Security Administration. At one point during the pendency of this case, Ms. Duma expressed an intention to prove medical expenses (related to her disability) for which she would be entitled to claim itemized deductions, but at trial she stated that she would not attempt such proof.

2.    Whether in 2004 Ms. Duma received $30,432 in proceeds from sales of stock (rather than $11,000, as she alleges).  We find that she received proceeds in the larger amount.

3.    Whether Ms. Duma filed tax returns for 2003 and 2004, as she alleges.  We find that she did not file returns and that she is therefore liable for the failure-to-file addition to tax under section 6651(a)(1) for both years.

4.    Whether Ms. Duma is liable for the addition to tax for failure to pay under section 6651(a)(2).  We find that she is liable for both years.

5.    Whether Ms. Duma is liable for the addition to tax for failure to pay estimated tax under section 6654(a) for 2004.  We find that she is.

FINDINGS OF FACT

The parties have stipulated some of the facts, and we incorporate by this reference the stipulation of facts filed October 16, 2009, and the attached exhibits.  At the time Ms. Duma filed her petition, she resided in Washington, D.C.

Ms. Duma's Employment

Before and during the years in issue (2003 and 2004), Ms. Duma was employed by Federal National Mortgage Association (FNMA, commonly called "Fannie Mae").  At some point in the years in issue she became disabled and stopped working.  She testified about a particular date in 2003 being her last day, but she

presented no corroborating evidence, and FNMA reported paying wages to her in 2004.[4]  We are therefore unable to find precisely when she stopped working.

Compensation Paid by FNMA

FNMA paid Ms. Duma wages and other benefits for her work. FNMA direct-deposited her wages into her account at the FNMA employees' credit union.

Pursuant to her employment arrangement with FNMA, Ms. Duma was entitled to, and eventually received, first short-term disability (STD) and then long-term disability (LTD) benefits. The record does not show the dates that she received such payments.  Ms. Duma did not offer plan documents for either of these benefits, but she testified that FNMA itself paid the STD benefits and that a third party (UNUM) paid the long-term.  The record does not include reliable information about the nature or source of the payments.

FNMA also had a program by which it lent money to employees for home purchases and then forgave the loans.  Ms. Duma did not present any documentation to describe the terms of this program. She testified that FNMA made such a loan to her, that she had not reported the loan proceeds as income, that FNMA had later

---

[4]Ms. Duma testified that she received short-term disability benefits from her last day at FNMA in 2003 through some time in 2004 and implied that the FNMA payments reported as wages in 2004 may have been disability payments, but she did not introduce any further evidence to clarify this question.

forgiven the loan pursuant to the program, and that she did not report the forgiven amount as income. She initially testified that the forgiveness occurred in the years in issue, but then testified that it must have been in a later year. The record does not show whether in 2003 or 2004 FNMA forgave loans it had made to Ms. Duma.

FNMA paid compensation to Ms. Duma in the amounts of $92,798 for 2003 and $9,693 for 2004. Ms. Duma did not prove her FNMA wage amount to be lower than $92,798 in 2003, and she did not dispute the $9,693 amount in 2004. FNMA reported those amounts to the IRS, and the IRS used those figures in determining Ms. Duma's income tax liability.

Stock Benefit Payments From Equiserve

Ms. Duma received an FNMA stock benefit through what was apparently an employee stock option plan. She presented no plan documents or other written explanation of this benefit. She testified that shares awarded through this plan could be taken either as stock or as cash. At some point or points during 2003 and 2004, she received a stock benefit and elected the cash option. When an employee elected the cash option, payments were made by Equiserve, Inc., which FNMA had retained to manage the benefit.

In 2004 Equiserve made four payments to Ms. Duma, in the amounts of $1,619, $7,706, $9,507, and $11,600, which totaled

$30,432.  Ms. Duma did not prove that her income in 2004 from this stock benefit was lower than $30,432.  Equiserve reported those payments to the IRS, and the IRS included that total in income when determining Ms. Duma's income tax liability.

Ms. Duma's Filings With The IRS

The record does not show whether Ms. Duma filed a return for 2002, the year immediately preceding the years in issue, and there is some evidence that she did not do so:  The IRS's substitute for return for each of the years 2003 and 2004 contains an entry that reads:  "PRIOR YEAR RETURN: 1996".

On the due dates for the 2003 and 2004 returns at issue in this case--i.e., on April 15, 2004 and 2005--Ms. Duma left her home, boarded a bus, and rode to the local IRS office, where she completed and filed a form to receive an automatic four-month extension to file her tax return.  The IRS's records show timely filings of requests for extensions and thus corroborate Ms. Duma's testimony to this effect.

However, Ms. Duma did not prove by a preponderance of the evidence that she filed her tax return for 2003 or 2004.  The IRS's records reflect no such filings, and Ms. Duma has no copy of the returns and no mailing receipt.  We find that she did not file a tax return for 2003 or 2004.

IRS Action

When the IRS did not receive returns for Ms. Duma, the IRS prepared, pursuant to section 6020(b), a substitute for return (SFR) for each of the years 2003 and 2004, using the information provided to it by third-party payors. The IRS then issued to Ms. Duma, on February 20, 2007, two statutory notices of deficiency--one each for the years 2003 and 2004--determining deficiencies in her income tax for both those years and determining additions to tax for failure to file (under section 6651(a)(1)), for failure to pay tax (under section 6651(a)(2)), and for failure to make estimated tax payments (under section 6654(a)).

Pretrial Proceedings

On May 18, 2007, Ms. Duma timely filed her petition commencing this case. The case was set for trial at the calendar commencing eleven months later on April 21, 2008, in Washington, D.C.; but when Ms. Duma appeared at that calendar call, she requested a continuance so she could have more time to assemble additional information. The Court granted a continuance.

On June 3, 2008, Ms. Duma filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Columbia, and shortly thereafter proceedings in this case were stayed pursuant to 11 U.S.C. section 362(a)(8). On November 7, 2008, the bankruptcy court granted Ms. Duma a discharge, and proceedings here resumed

on January 2, 2009. On May 12, 2009, the Court issued its notice that this case was set for trial at a calendar commencing five months later on October 13, 2009--i.e., two years and five months after Ms. Duma first filed her petition--and issued its standing pretrial order, directing both parties to (among other things) exchange exhibits and submit pretrial memoranda no later than 14 days before the calendar call.

By October 1, 2009, the Court had received respondent's pretrial memorandum but none from Ms. Duma. Respondent's report stated that Ms. Duma was not cooperating in providing to respondent the information that she would rely on at trial. On that day the Court initiated a telephone conference with the parties to discuss the case. The Court told Ms. Duma that she was overdue for exchanging exhibits and should do so immediately. She responded that her disability made it difficult to do so, and the Court ordered her to be sure to bring her exhibits to the calendar call. Ms. Duma spoke of the unavailability of some documents that she might want to present, and the Court suggested that she consider what alternative documents might serve, mentioning in particular bank statements, credit card statements, calendars, log books, or day books.

Ms. Duma appeared at the calendar call on October 13, 2009, apparently carrying with her some documents (which she showed to respondent's counsel), and she asked for more time to obtain

information.  At her request, the Court scheduled her trial for the afternoon of the last day of the calendar--Friday, October 16, 2009.  When Ms. Duma appeared at that time, however, she had no documents with her, neither the documents she had brought to the calendar call nor the additional documents she had hoped to obtain.  The only documents offered into evidence at the trial were:

| Exhibit No. | Year | Description |
|---|---|---|
| 1-J | 2003 | Notice of deficiency |
| 2-J | 2004 | Notice of deficiency |
| 3-R | 2003 | Form 4340, Certificate of Assessments, Payments, and Other Specified Matters |
| 4-R | 2004 | Form 4340, Certificate of Assessments, Payments, and Other Specified Matters |
| 5-R | 2004 | Proposed individual income tax assessment (30-day letter) with attached sec. 6020(b) certification and return |
| 6-R | 2003 | Proposed individual income tax assessment (30-day letter) with attached sec. 6020(b) certification and return |

OPINION

I.   Income Issues

     A.   Burden of Proof

The IRS's deficiency determinations are generally presumed correct; and Ms. Duma, as the petitioner in this case, has the burden of establishing that the determinations in the notices of deficiency are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Ms. Duma had two and a half years (between petition and trial) to assemble her evidence.  In a

pretrial telephone conference the Court reminded her of her burden and suggested to her the types of information she might consider bringing as proof of her contentions.  When, at the calendar call, she requested additional time to find information, the Court allowed her the latest trial time in the week-long calendar.  Despite all that, she produced no documents whatsoever to corroborate any aspect of her testimony on the disputed issues.  She thus failed to carry her burden of proof.

B.  Ms. Duma's Liability

1.  FNMA Compensation

The IRS received information from FNMA showing wages of $92,798.  Ms. Duma gave oral testimony that she received less than that total, but she did not corroborate her recollection with any statements from FNMA, any records from her credit union account into which the amounts would have been deposited, or any other records of any sort.  At a calendar call in this Court held April 21, 2008, Ms. Duma stated:  "For 2003, my annual income was over $92,000."  By the time of the trial in October 2009, however, Ms. Duma was disputing the figure for 2003 and said it was not $92,798 but only approximately $66,000.  At some point before trial she showed to respondent's counsel several pay stubs and a printout of some sort that showed the smaller figure, but respondent's counsel stated that he had not been able to identify or authenticate the printout, and Ms. Duma did not offer the

printout or the pay stubs at trial. She testified that she probably had, somewhere amid voluminous records, her employee copy of her Form W-2, Wage and Tax Statement, issued by FNMA for 2003, but she did not find it before trial.

Ms. Duma's testimony indicated two possible reasons that the correct amount might be larger than she supposed: It is possible that the disputed income figure for 2003 includes STD payments that she received but that were not on her printout that she showed to respondent's counsel, and it is also possible that some of the income amounts reported by FNMA for 2003 or 2004 were for loan forgiveness. In any event, she did not prove that her compensation was less than FNMA reported.

### 2. Stock Benefit

The IRS received information from Equiserve showing stock proceeds of $30,432. Ms. Duma disputes the figure and says it was instead approximately $11,000. She presented no documentation--neither statements from FNMA or Equiserve, nor records from her account at the credit union--to corroborate the lower amount.

Ms. Duma speculates, and it is possible, that some of the difference between Equiserve's total and her lower figure is accounted for by the stock's being attributed to her on a date when the value of the stock was higher, but then being sold (and cash paid to her) on a later date when the value had fallen.

Even if her uncorroborated explanation were correct and accounted for the entire difference, it appears on the record before us that the stock itself would have been income to her when it was initially awarded (and in the amount of its then value), and she neither argued for nor established any entitlement to a deduction for any loss on the sales. However, it seems more likely that her impression of having received approximately $11,000 is the result of her recalling the fourth Equiserve payment of $11,600 and forgetting the other three. In any event, she did not prove that she received less than $30,432 in stock proceeds from Equiserve.

## II. Addition-to-Tax Issues

### A. Burden of Production

Section 7491(c) provides that the Commissioner "shall have the burden of production * * * with respect to the liability of any individual for any * * * addition to tax". "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant * * * addition to tax". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If a taxpayer files a petition alleging some error in the determination of an addition to tax, the taxpayer's challenge will succeed unless the Commissioner produces evidence that the

addition to tax is appropriate.  Swain v. Commissioner, supra at 363-365.

    B.   Ms. Duma's Liability

        1.   Additions to Tax for Failure To File

Section 6651(a)(1) imposes an addition to tax "[i]n case of failure * * * to file any return".  We have found that Ms. Duma failed to file her returns for 2003 and 2004.  She did file requests for extensions, but her uncorroborated testimony that she filed returns was not persuasive.

    Ms. Duma claims that late in the day on April 15, 2005, after having made her first trip to the IRS to file the 2004 extension form, she finished filling out her tax returns for 2003 and 2004 (but made no copy of the returns for herself because she had no spare blank forms).  She says that the returns she prepared showed that she was entitled to small refunds.  She says that she stapled together the two returns for 2003 and 2004 and put them into a single envelope for mailing.  She testified that, on April 15, 2005, she made a second bus trip to the same neighborhood, where the IRS office is near the post office.  At the post office there, last-minute filers of tax returns walk and drive by and mail their returns by dropping them in a bucket that a postal worker holds out for that purpose.  She testified that she mailed her 2003 and 2004 returns in that fashion.

Ms. Duma's testimony is problematic. Her disability (she seems to say) made it difficult for her to run the errand of photocopying the return or to obtain a second blank return she could complete and keep as her copy; and yet she went to the substantial trouble of making two separate bus trips to the same neighborhood on the same day--the first in order to file the request for an extension just in case she did not finish the 2004 return on time, and the second in order to file her returns for both 2003 and 2004. Given Ms. Duma's condition, this elaborate effort is unlikely. And if she did make a first trip to file her extension request, with an expectation of filing the returns that day, then it would seem she could have obtained the spare blank forms that she now claims she did not have.

The IRS's transcripts of Ms. Duma's accounts for 2003 and 2004 do not show the filing of any returns. She claims that when she later made inquiries with the IRS, personnel told her that her returns had been rejected because they had been stapled and because she had used "white-out" fluid to make corrections on them. She says that those personnel told her to submit duplicate originals, but that she did not do so. It is difficult to account for her refusal to file a duplicate original after that alleged conversation.

It is not impossible that Ms. Duma's account is true, but she did not prove it by a preponderance of the evidence. We therefore find that she did not file her returns.

Section 6651(a)(1) provides that the addition will not be due if the failure to file "is due to reasonable cause and not due to willful neglect". (The Commissioner does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447.) Ms. Duma does not allege any "reasonable cause" excuse, and we find here no circumstances that would constitute reasonable cause.

The amount of the failure-to-file addition is 5 percent of "the amount required to be shown as tax" for each month of the delinquency, "not exceeding 25 percent in the aggregate".[5] Sec. 6651(a)(1). The specific amount of Ms. Duma's failure-to-file addition for each year will be calculated after the amount of her tax liability has been redetermined, taking into account the parties' concessions, see supra notes 2 and 3, and our findings.

---

[5]Section 6651(c)(1) limits the section 6651(a)(1) failure-to-file addition to tax by subtracting the section 6651(a)(2) failure-to-pay addition (0.5 percent), which is discussed below in part II.B.2, from the section 6651(a)(1) failure-to-file addition (5.0 percent) for any month that additions to tax apply under both section 6651(a)(1) and (a)(2).

### 2.   Additions to Tax for Failure To Pay

Section 6651(a)(2) imposes an addition to tax "[i]n case of failure * * * to pay the amount shown as tax on any return", including an income tax return.  This addition does not accrue unless a tax amount is "shown on" a return, so the Commissioner must introduce evidence that the tax was shown on a Federal income tax return to satisfy his burden of production under section 7491(c).  Cabirac v. Commissioner, 120 T.C. 163 (2003). When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may be imposed if the IRS prepared an SFR that meets the requirements of section 6020(b).  Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).  In this case the IRS satisfied its burden by offering the SFR for each year (along with a signed "IRC Section 6020(b) ASFR Certification"), and Ms. Duma suggests no defect in the agency's procedure.

As with the failure-to-file addition, the statute provides that the addition for failure to pay will not be due if the failure "is due to reasonable cause and not due to willful neglect".  Sec. 6651(a)(2).  However, Ms. Duma has not alleged any "reasonable cause" for her failure to pay, and we find none.

The amount of the failure-to-pay addition is one-half of 1 percent of "the amount shown as tax" for each month of the delinquency, "not exceeding 25 percent in the aggregate".  The

specific amount of Ms. Duma's failure-to-pay addition for each year will be calculated, according to this formula, after the amount of her tax liability has been redetermined, taking into account the parties' concessions, see supra notes 2 and 3, and our findings.

3. Addition to Tax for Failure To Pay Estimated Tax

Section 6654(a) imposes an addition to tax "in the case of any underpayment of estimated tax by an individual". A taxpayer has an obligation to pay estimated tax for a particular year if she has a "required annual payment" for that year. Sec. 6654(d). A "required annual payment" is defined in section 6654(d)(1)(B) as--

the lesser of--

(i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

> > (ii) 100 percent of the tax shown on the return of the individual[6] for the preceding taxable year.
>
> Clause (ii) shall not apply if * * * the individual did not file a return for such preceding taxable year. [Emphasis added.]

Thus, respondent's burden of production under section 7491(c) requires him to produce, for each year for which the addition is asserted, evidence that the taxpayer had a required annual payment under section 6654(d), and in order to do so he must demonstrate the tax shown on the taxpayer's return for the preceding year, unless he can show that the taxpayer did not file a return for that preceding year. Wheeler v. Commissioner, supra at 212. For 2004 the record establishes that Ms. Duma "did not file a return for such preceding taxable year"--i.e., 2003--so respondent has shown a "required annual payment" for 2004 equal to 90 percent of the liability for that year.

---

[6]Notwithstanding section 6020(b)(2), which provides that an SFR prepared and executed by the IRS pursuant to section 6020(b) "shall be prima facie good and sufficient for all legal purposes", an SFR is not a "return of the individual" (emphasis added) for purposes of section 6654(d)(1)(B)(ii). Cf. Swanson v. Commissioner, 121 T.C. 111, 123-124 (2003) ("An SFR prepared under section 6020(b) does not constitute a return of the taxpayer for purposes of 11 U.S.C. sec. 523(a)(1)(B)" (citing Bergstrom v. United States, 949 F.2d 341, 343 (10th Cir. 1991))); Spurlock v. Commissioner, 118 T.C. 155 (2002) (a "return * * * made by the taxpayer" under sec. 6211(a)(1)(A) does not include an SFR executed under sec. 6020(b)); Millsap v. Commissioner, 91 T.C. 926, 937 (1988) (to give "a rational meaning for the word 'individual' in section 6013(b)", an SFR prepared under section 6020(b) is not a "separate return" under sec. 6013(b)(1)).

At trial Ms. Duma indicated that she did not know about an obligation to pay estimated tax. However, the section 6654(a) addition to tax is mandatory and must be imposed unless a statutory exception applies, and there is no exception provided for ignorance. See Recklitis v. Commissioner, 91 T.C. 874, 913 (1988). Reasonable cause is not an excuse for underpayment of estimated tax. Sec. 1.6654-1(a)(1), Income Tax Regs. Section 6654(e)(3)(A) does provide that a taxpayer may avoid this addition if she can show that "by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience", but Ms. Duma made no such showing.

Consequently, the addition to tax for failure to pay estimated tax is sustained for 2004, in an amount yet to be determined.

To reflect the foregoing,

Decision will be entered

under Rule 155.