# United States Tax Court

T.C. Memo. 2026-27

TIBOR GYARMATI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 33671-21.                          Filed March 26, 2026.

_____

*Venar R. Ayar* and *Hayden G. Leithauser*, for petitioner.

*Stephanie A. Kingsley*, *Jenny M. Lingl*, and *Rebecca M. Clark*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, *Judge*: The Commissioner of Internal Revenue (Commissioner) determined that Petitioner, Tibor Gyarmati, has a deficiency of $860,547 in his 2015 federal income tax and is liable for additions to tax of $193,623 under section 6651(a)(1)[1] for failure to timely file a return, $215,137 under section 6651(a)(2) for failure to timely pay tax, and $15,499 under section 6654 for failure to make sufficient estimated tax payments. Mr. Gyarmati's deficiency and additions to tax are due in large part to the sale of rental property in Clinton Township, Michigan (Michigan property), and a condominium unit in Marco Island, Florida (Florida condo), in 2015.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*2]**  After concessions,[2] the parties' disagreement centers around the sale of the Florida condo and liability for the additions to tax.  In particular, they disagree on whether Mr. Gyarmati is entitled to reduce his capital gain on the sale by either (i) increasing his adjusted basis in the Florida condo for claimed additional capital improvements or (ii) reducing his amount realized on the Florida condo by allocating some of the purchase price to furnishings sold with the condo.  The parties also disagree about whether Mr. Gyarmati is liable for additions to tax or had a reasonable cause defense therefor.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  Mr. Gyarmati resided in Michigan when he timely filed his Petition.

I.  *Mr. Gyarmati*

Mr. Gyarmati is married, and he and his wife have four children.  As his primary occupation, Mr. Gyarmati owns and operates several car dealerships.  At least one of his dealerships is in Michigan (Michigan dealership).  In addition, he is licensed by the American Society of Interior Designers (ASID) allowing him to purchase furnishings at wholesale prices (i.e., about 40% less than retail prices).  Over the years

---

[2] The concessions for tax year 2015 are as follows:

(1) The parties agree that Mr. Gyarmati's filing status is Married Filing Separately;

(2) the parties agree that Mr. Gyarmati received gross rental income of $260,004, had rental property expenses of $76,818, and must include in taxable income $183,186 of net rental income from his Michigan property; and that he realized a $918,654 gain on the sale of that Michigan property;

(3) the parties agree that Mr. Gyarmati is entitled to increase his adjusted basis in the Florida condo by $18,574 for capital improvements;

(4) the Commissioner concedes in his Answering Brief that Mr. Gyarmati received only $717,993 of the $775,000 Florida condo sale price (with the price reduced by $57,007 in transaction costs);

(5) Mr. Gyarmati concedes net investment income tax of $6,961;

(6) Mr. Gyarmati concedes taxable interest of $116;

(7) Mr. Gyarmati concedes that he must include in income a state tax refund of $2,618 for a tax that was deducted in a prior tax year; and

(8) the Commissioner concedes itemized deductions of $60,308.

Neither party has argued that any portion of the sale proceeds from the Florida condo (or any other 2015 income item) should be allocated to Mr. Gyarmati's wife; consequently, we address all income adjustments as solely Mr. Gyarmati's throughout this Opinion.

[*3] he purchased significant amounts of furniture using his ASID license, but such purchases appear to have been mostly for personal use. He would periodically store purchases at his Michigan dealership, which had substantial storage space.

## II.    *Florida Condo*

In or about February 1989 Mr. Gyarmati and his wife purchased an unfurnished condo in Florida for $410,000.  The condo was approximately 3,000 square feet and had a living room, dining room, sitting room, free-standing bar room, laundry room, balconies, three bedrooms (one master), and three bathrooms.  Mr. Gyarmati remodeled the condo several times during ownership.

In addition to the remodeling, the Gyarmatis fully furnished the Florida condo.  At one or more uncertain dates, the condo was furnished with the following furnishings: The living room held a custom-made wall unit with a built-in rear projection television, a leather sectional couch, a coffee table, a glass cocktail table, and two chairs; the dining room contained a table with six chairs and a hutch for dishes; the balconies had teak furniture; and the bedrooms had beds, nightstands, dressers, and armoires.

In August 1992 the Florida condo was severely damaged by Hurricane Andrew.  The condo's hurricane windows failed, resulting in substantial interior water damage.  The condo had no power for several days or weeks.  Without air conditioning, the hot and humid conditions inside the condo led to mold growth.  There was extensive mold damage to the condo and its furnishings.

Mr. Gyarmati's insurance policy covered damage to items inside the Florida condo but excluded damage from mold.  He separately provided funding to remediate the mold damage.  Much of the furnishings, floor coverings, wall coverings, and drywall required replacement.  It is unclear which furnishings were in the Florida condo before Hurricane Andrew and damaged by the hurricane.  It is likewise unclear which furnishings were refurbished or replaced because of hurricane damage or bought at some date after Hurricane Andrew but before the sale of the Florida condo.  Mr. Gyarmati provided furniture invoices with dates before and after Hurricane Andrew (1984 to 1994); however, all but one of those invoices have no indication that they were delivered to and used in the Florida condo.  Even the invoices with dates shortly after Hurricane Andrew show Mr. Gyarmati's Bloomfield Hills,

[*4] Michigan, home as the delivery address. These included invoices for approximately $13,000 in Persian, Indian, Turkish, and other rugs, just under $15,000 in outdoor furniture, and $2,100 for a billiard table and supplies.

The Gyarmati family used the Florida condo as a vacation home. They visited the condo several times a year, usually for a week or longer. The Gyarmati family planned their limited vacation times around the school year. In part because the Gyarmati children were fond of winter sports, the family vacationed more frequently at their ski resort property in British Columbia, Canada, than at their Florida condo. Their limited use of the Florida condo prompted Mr. Gyarmati to sell it for $775,000 in 2015.

III.    *2015 Return and Notice of Deficiency*

Mr. Gyarmati did not file Form 1040, U.S. Individual Income Tax Return, for tax year 2015.[3] Instead, on the basis of third-party reports, the Commissioner prepared a 2015 substitute for return (SFR) and certified it on June 30, 2021. On September 22, 2021, the Commissioner issued to Mr. Gyarmati a Notice of Deficiency based on the 2015 SFR. Of the items included in the Notice of Deficiency, only the Commissioner's adjustment for the sale of the Florida condo and the additions to tax pursuant to sections 6651(a)(1) and (2) and 6654 remain at issue.

The Commissioner determined in the Notice of Deficiency for tax year 2015 a $1,960,000 adjustment to income for sales of real estate "held for sale to customers in the ordinary course of trade or business." However, we deem the Commissioner to have conceded any argument that the real estate sales adjustment should be greater than $1,208,073. That amount is calculated by adding the agreed-upon $918,654 gain on the sale of the Michigan property to the contested $289,419 gain from the sale of the Florida condo (calculated by taking the $717,993 net proceeds from the sale of the Florida condo less basis equal to the agreed-upon $410,000 purchase price and the $18,574 of remodeling cost). Thus, remaining for decision is whether Mr. Gyarmati is liable for tax on gain of $289,419 as well as additions to tax.

---

[3] We note that Mr. Gyarmati also failed to file his 2014 return.

[*5]                          OPINION

I.     *Burden of Proof*

The Commissioner's determinations in a Notice of Deficiency are generally presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a)(1); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Taxpayers are required to maintain records sufficient to enable the Commissioner to correctly determine the taxpayer's tax liability. *See* I.R.C. § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001); Treas. Reg. § 1.6001-1(a). Taxpayers must retain records so long as their contents might become material in the administration of the Code. *See* Treas. Reg. § 1.6001-1(e).

Under certain circumstances the burden of proof shifts from the taxpayer to the Commissioner. *See* I.R.C. § 7491(a). Mr. Gyarmati does not contend that he has met the requirements for shifting the burden of proof, and the record does not indicate that he has. Thus, the burden of proof for all factual issues remains with Mr. Gyarmati.

II.    *The Commissioner's SFR*

We note at the outset that this case involves a challenge to the 2015 SFR prepared by the Commissioner. SFRs are a product of section 6020(b), which provides that, if any person fails to make any return required by law, "the Secretary shall make such return from his own knowledge and from such information as he can obtain." *See also Rodriguez v. Commissioner*, T.C. Memo. 2009-22, 97 T.C.M. (CCH) 1090, 1092 ("[T]he IRS has full authority to prepare an SFR for anyone who fails to file his own return."). The key items remaining at issue in the 2015 SFR for Mr. Gyarmati are the Commissioner's determination of gain from the sale of the Florida condo and the additions to tax that flow from that adjustment as well as the conceded items. Mr. Gyarmati argues that he had reasonable cause for any late filing and underpaying his 2015 tax and any failure to make sufficient estimated tax payments such that additions to tax should not be assessed against him.

III.   *Florida Condo Adjusted Basis*

A taxpayer must recognize gain when selling property for more than his adjusted basis. *See* I.R.C. § 1001(a); Treas. Reg. § 1.61-6(a). A taxpayer may increase his adjusted basis in property for costs incurred to improve the property, *see* I.R.C. § 1016(a); Treas. Reg. § 1.1016-2(a),

[*6] but he generally bears the burden of proving claimed basis increases, Rule 142(a). We may estimate a taxpayer's total expenses if he has failed to keep exact records, *see Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930), but "we must have some basis on which an estimate may be made," *Vanicek v. Commissioner*, 85 T.C. 731, 743 (1985); *see also Lerch v. Commissioner*, 877 F.2d 624, 627–29 (7th Cir. 1989) (finding the *Cohan* rule inapplicable where the taxpayer failed to present evidence to support a reasonable estimate), *aff'g* T.C. Memo. 1987-295.

Mr. Gyarmati advances two arguments for reducing his capital gain on the sale of the Florida condo. First, he contends that he is entitled to increase his adjusted basis in the Florida condo by $95,000 rather than the agreed-upon $18,574 in improvements to the condo. Second, he contends that he sold furnishings with the Florida condo at a loss and that around $62,500 of the $775,000 sale price is allocable to the furnishings. We will address each of his two contentions in turn.

A.    *Florida Condo Remodeling*

Mr. Gyarmati contends that he is entitled to increase his adjusted basis in the Florida condo by $95,000 to reflect improvements made to the property after Hurricane Andrew. According to Mr. Gyarmati, the basis increase he is claiming does not even include amounts paid to repair hurricane damage, mold or otherwise.

We did not find Mr. Gyarmati to be a credible witness. His testimony was vague, inconsistent, and oftentimes contradictory. Very little of his testimony was about remodeling the Florida condo. Likewise, he produced only a few documents to reflect possible capital improvements to the condo. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986) (stating that we are not required to accept a taxpayer's self-serving testimony).

Mr. Gyarmati testified that he spent "probably $150,000" remodeling the condo. He had difficulty remembering when, and how often, the remodeling occurred. Mr. Gyarmati initially testified that he remodeled the condo in 1989, 1990, 1992, and 1994. He later testified that the remodeling process was "ongoing," including one major remodeling project after Hurricane Andrew. Regardless of when the Florida condo was remodeled, Mr. Gyarmati's testimony shed very little light on the types of work performed during the disputed remodeling projects.

**[*7]**     In an attempt to substantiate the alleged capital improvements, Mr. Gyarmati provided a sales order for a metal wall bracket, a selection sheet for floor tile, and an order form for two bathroom light fixtures. The documents were dated 1988, 1994, and 1989, respectively. All the items were either purchased in Michigan or shipped to Mr. Gyarmati's home in Bloomfield Hills. He also produced a 1994 order form for a $23,000 chandelier that was to be delivered to his Bloomfield Hills home. He contends that all these items were ultimately driven from Michigan to Florida in dealership panel trucks, installed in the Florida condo, and sold with the property.

Overall, Mr. Gyarmati has not met his burden of proving the $95,000 increase in adjusted basis that he now claims. The record contains insufficient detail regarding the type of remodeling that was done at the condo. Furthermore, documents show only that the items were either purchased by Mr. Gyarmati in Michigan or shipped to his home there. We find it unlikely that the Florida condo was sold with a $23,000 chandelier, and Mr. Gyarmati could not assure us of such. Overall, we are unable to estimate additional capital improvements made to the condo, if any, under the *Cohan* rule because we have no reasonable basis for making such an estimate. *See Vanicek*, 85 T.C. at 743. We hold that Mr. Gyarmati is not entitled to increase his adjusted basis in the Florida condo in excess of the agreed-upon $428,574 (i.e., $410,000 + $18,574).

B.     *Furnishings*

Mr. Gyarmati likewise contends that furnishings sold with the Florida condo had a fair market value of at least $62,500 and an adjusted basis of around $250,000. Therefore, he urges us to apportion $62,500 of the $775,000 sale price to the furnishings, which would reduce his gain on the condo itself (by reducing the amount realized allocable to the condo). To support his contentions, Mr. Gyarmati produced documents related to the purchase of furnishings. Those documents are not connected to the Florida condo in the absence of Mr. Gyarmati's testimony and a note on a single order form acknowledgment that mentions Mr. Gyarmati's "condo in Florida" but is dated before Hurricane Andrew.

Mr. Gyarmati testified that he did not have a sales contract for the Florida condo and that there was no separate bill of sale for the furnishings. What he did produce were furniture invoices with dates ranging from 1984 to 1994, which would have made any such

[*8] furnishings between 21 and 31 years old on the date the Florida condo was sold. We find it unlikely that a buyer would have given much, if any, value to noncollectible furnishings that were so old. As well, many of the invoices produced predated Hurricane Andrew, and if they actually represented furniture moved to Florida at time of purchase, it is unclear whether they survived the hurricane. Moreover, the invoices cumulatively accounted for more furniture sets than could possibly have fit into the Florida condo.

The only thing Mr. Gyarmati knew for certain was that $775,000 was the total price the buyer paid for the condo. Mr. Gyarmati did not know the fair market value of the condo itself or of the furnishings allegedly sold with it. He has failed to show that any amount of the purchase price was for furnishings, and we have no reasonable basis upon which to estimate the amount of the sale proceeds allocable to furnishings. *See, e.g., Peterson v. Commissioner*, T.C. Memo. 1987-508, 54 T.C.M. (CCH) 808, 816 n.13 ("[W]e are not willing to . . . allocate between the cost of the house and its furnishings in view of the complete lack of any evidence in this regard in the record."). Thus, we hold that Mr. Gyarmati may not adjust the purchase price nor reduce his gain on the Florida condo on account of any furnishings he might have conveyed in the sale.

C. *Calculation of Gain*

Overall, we hold that Mr. Gyarmati's 2015 gain from the sale of the Florida condo was $289,419. Thus, his total gain from real estate sales for 2015 is $1,208,073. The total is calculated by adding the conceded $918,654 gain on the sale of the Michigan property to the $289,419 gain on the sale of the Florida condo.

IV. *Additions to Tax*

A. *Section 6651(a)(1) and (2)*

Section 6651(a)(1) imposes an addition to tax for the failure to file a return on or before the due date, unless the taxpayer can establish that his failure was "due to reasonable cause and not due to willful neglect." Section 6651(a)(2) imposes an addition to tax for the failure to timely pay the amount shown as tax on a filed return. If the Commissioner prepared an SFR on the taxpayer's behalf, the failure-to-timely-pay addition is computed on the basis of the amount shown as due on the SFR. I.R.C. § 6651(g)(2). However, that addition is adjusted according to the actual amount of tax finally determined if lower than

[*9] the SFR amount. I.R.C. § 6651(c)(2). Reasonable cause can likewise reduce or eliminate the failure-to-pay addition to tax.

To demonstrate reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence with respect to filing and paying his taxes, respectively. He must further show that he nevertheless was unable to file or pay on time or that timely payment would have posed an undue hardship. *United States v. Boyle*, 469 U.S. 241, 246 (1985); Treas. Reg. § 301.6651-1(c)(1). Here, the Commissioner satisfied his burden of production for the additions to tax by producing the SFR and the IRS Account Transcript for Mr. Gyarmati's 2015 tax year. *See* I.R.C. § 7491(c); *Higbee*, 116 T.C. at 446. Mr. Gyarmati therefore has the burden of proving that the reasonable cause exception applies. *See Higbee*, 116 T.C. at 447.

Mr. Gyarmati offered no excuse for his failures to timely file a 2015 tax return and to pay the tax due. Given this lack of evidence, we hold Mr. Gyarmati liable under section 6651(a)(1) and (2).

B. *Section 6654*

Section 6654 provides for an addition to tax if the taxpayer had an obligation to make estimated tax payments and failed to do so. A taxpayer generally has an obligation to pay estimated tax for a particular year only if he has a nonzero "required annual payment" for that year. I.R.C. § 6654(d). The required annual payment is equal to the lesser of (1) 90% of the tax shown on the taxpayer's return for that year (or if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding year, 100% of the tax shown on that return (or in some cases 110%). I.R.C. § 6654(d)(1). If a return for the immediately preceding year was not filed, as is the case here, the second test is inapplicable. I.R.C. § 6654(d)(1)(B). An SFR is not considered to be a return for purposes of section 6654(d)(1)(B). *See, e.g., Kupersmit v. Commissioner*, T.C. Memo. 2016-202, at *34; *Duma v. Commissioner*, T.C. Memo. 2009-304, 98 T.C.M. (CCH) 661, 665 n.6.

To satisfy his burden of production, the Commissioner must show that Mr. Gyarmati had an obligation to make estimated tax payments. *Wheeler v. Commissioner*, 127 T.C. 200, 211–12 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008); *Sanders v. Commissioner*, T.C. Memo. 2023-71, at *11. The Commissioner presented Mr. Gyarmati's 2014 Account Transcript and Information Returns Processing transcript to prove that

**[\*10]** Mr. Gyarmati was required to file a 2014 return, that he did not file a 2014 return, that he was required to make estimated payments for 2015, and that he did not make any estimated payments for 2015. Mr. Gyarmati has presented no contrary evidence and makes no other argument against imposing the section 6654 addition to tax. We therefore affirm the Commissioner's determination that Mr. Gyarmati is liable for an addition to tax under section 6654 for 2015.

V.    *Conclusion*

On the basis of the foregoing, we conclude that Mr. Gyarmati's gain from sales of real property for 2015 is $1,208,073 and that he is liable for additions to tax under sections 6651(a)(1) and (2) and 6654.

To reflect the foregoing and the concessions of the parties,

*Decision will be entered under Rule 155.*