T.C. Memo. 2016-202

UNITED STATES TAX COURT

HAROLD P. KUPERSMIT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22350-14.                          Filed November 8, 2016.

Harold P. Kupersmit, for himself.

<u>Daniel C. Munce</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Respondent mailed petitioner a notice of deficiency

for the 2009 tax year, determining the following income tax deficiency and the

[*2] following additions to tax for failure to file a return, failure to pay tax, and failure to pay estimated income tax, respectively:[1]

|  |  | Additions to tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6654(a) |
| 2009 | $12,919 | $2,256.98 | $1,153.57 | $232.50 |

Petitioner timely filed a petition under section 6213(a) for redetermination of the deficiency and the additions to tax.[2] We have jurisdiction under section 6214(a). After concessions, the issues to be resolved are:

(1)     the amount of petitioner's taxable Social Security benefits. We hold it is $11,244, the amount determined in the notice of deficiency, contingent on recomputation of modified adjusted gross income under Rule 155;

(2)     the amount of petitioner's interest income. We hold it is $577, the amount determined in the notice of deficiency;

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner resided in Pennsylvania when he filed the petition. Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Third Circuit unless the parties designate another circuit in writing. See sec. 7482(b)(1) and (2).

[*3] (3)     the amount of petitioner's dividend income.  We hold it is $62, the amount determined in the notice of deficiency;

(4)     the amount of petitioner's capital gain income.  We hold it is $525, the amount determined in the notice of deficiency;

(5)     the amount of petitioner's gambling income.  We hold it is $50,534, not $63,855 as determined in the notice of deficiency;

(6)     whether petitioner is liable for the section 6651(a)(1) addition to tax.  We hold he is liable;

(7)     whether petitioner is liable for the section 6651(a)(2) addition to tax.  We hold he is liable; and

(8)     whether petitioner is liable for the section 6654(a) addition to tax.  We hold he is liable.

## FINDINGS OF FACT

2008 tax year

Petitioner did not file a Federal income tax return for 2008.  On October 18, 2010, respondent prepared a substitute for return for 2008 showing tax of $870,220.[3]

---

[3]The tax year before the Court is 2009.  The record does not reveal how the IRS determined the tax for 2008.

**[*4]** 2009 tax year

Nor did petitioner file a return for 2009. The only payments of Federal income tax that he made for 2009 were $2,888 withheld from his gambling winnings. On February 21, 2012, respondent prepared a substitute for return for 2009, showing tax of $12,919 and credits of $2,888. On April 23, 2012, respondent mailed petitioner the notice of deficiency for 2009, which reflected the same amounts of taxable income, tax, and credits as did the substitute for return.

OPINION

Under Rule 142(a) a taxpayer generally has the burden of proving that the determinations in the notice of deficiency are wrong. To satisfy that burden for a particular fact, the taxpayer must prove the fact by a preponderance of the evidence. Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987). Although the burden of proof can be imposed on the Commissioner regarding the deficiency if certain conditions are met, sec. 7491(a)(1) and (2), the conditions have not been met for any of the issues in this case related to the deficiency. The burden of proof therefore rests on petitioner regarding the deficiency.

In addition to the burden of proof, by which in this context we mean the burden of persuasion, Estate of Gilford v. Commissioner, 88 T.C. at 51, a taxpayer generally has the burden of production regarding determinations in the notice of

[*5] deficiency. <u>Anastasato v. Commissioner</u>, 794 F.2d 884, 886 (3d Cir. 1986), <u>vacating</u> T.C. Memo. 1985-101. This is because the determinations in the notice of deficiency are accorded a presumption of correctness. <u>Id.</u> Where a case involving unreported income is appealable to the Court of Appeals for the Third Circuit, the Commissioner must produce foundational evidence linking the taxpayer to the income-generating activity in order to benefit from the presumption of correctness. <u>See id.</u> at 887 (citing <u>Gerardo v. Commissioner</u>, 552 F.2d 549, 554 (3d Cir. 1977), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1975-341). Because petitioner did not file a return for 2009, he did not report any of the income that the notice of deficiency determined he earned. We therefore consider whether there is sufficient foundational evidence linking petitioner to the activity generating the income. We hold that there is. Petitioner acknowledged in his testimony that he received approximately $13,228 of Social Security benefits. Petitioner is linked to a bank account at TD Bank N.A. (hereinafter TD Bank) by a signature card with his name and signature on it. There are also bank statements with petitioner's name showing deposits of checks written to him. Petitioner's testimony links him with a bank account at Citizens Bank of Pennsylvania. He said that the bank account was his wife's money and that all of his wife's accounts are joint accounts with him. We consider these statements an admission that the

[*6] bank account at Citizens Bank of Pennsylvania was a joint account held by petitioner and his wife. Petitioner is linked to a Morgan Stanley brokerage account by a Form 1099-DIV, Dividends and Distributions, which refers to the account as a joint account held by petitioner and his wife. There is also a brokerage statement stating that the account was held jointly by petitioner and his wife. Petitioner is linked to gambling activity at Philadelphia Park by Forms W-2G, Certain Gambling Winnings, and by his own testimony admitting that he gambled there. Petitioner is linked to gambling activity at Melbourne Greyhound Park L.L.C. by a Form W-2G and by his testimony admitting he gambled there. Petitioner is linked to gambling activity at New York Racing Association by his testimony. When asked about the amount of gambling income from New York Racing Association, he challenged the amount determined in the notice of deficiency on the ground that it had not been reduced by the amount of his bets. We consider this an admission that he gambled with the New York Racing Association. Petitioner is linked with all the activities generating the income determined in the notice of deficiency. We therefore hold that the determinations in the notice of deficiency regarding unreported income are presumed correct.

The burden of proof and the burden of production regarding the additions to tax are discussed separately infra parts 6, 7, and 8.

**[\*7]** 1.    Social Security income

In the notice of deficiency respondent determined that petitioner received $13,228 of Social Security benefits and that 85%, or $11,244, was taxable. Petitioner acknowledged in his testimony that he received approximately $13,228 of Social Security benefits during 2009. However, he testified that it was "disingenuous" for respondent to determine that 85% of the benefits received was taxable.

Section 86 requires the inclusion in gross income of up to 85% of Social Security benefits received. Brady v. Commissioner, T.C. Memo. 2013-1, at \*4. The taxable portion of Social Security benefits depends in part on the taxpayer's modified adjusted gross income. Sec. 86; Jelle v. Commissioner, 116 T.C. 63, 16-18 (2001). The notice of deficiency determined that the taxable portion of petitioner's Social Security benefits was 85% given the notice's computation of modified adjusted gross income. The amount of modified adjusted gross income resulting from the conclusions in this opinion will be computed under Rule 155. Subject to this computation, we hold that petitioner must include $11,244 of his Social Security benefits in gross income.

[*8] 2.     Interest income

In the notice of deficiency respondent determined that petitioner had interest income of $577. In his pretrial memorandum respondent contended more specifically that petitioner received "interest in the amounts of $121.00 and $456.00 from TD Bank N.A. and Citizens Bank of Pennsylvania, respectively". The sum of these two amounts is $577, the amount in the notice of deficiency. Respondent further contended that he is entitled to use third-party information to determine petitioner's income.

At trial respondent introduced a Form 1099-INT, Interest Income, from TD Bank reporting that petitioner earned $121 of interest income. Respondent also introduced a signature card for an account at TD Bank that indicated that the account holders were petitioner and his wife. The card was signed by both. It stated that the account was opened on March 18, 2006, with an opening deposit of $68,661.39. The card indicated that the "OWNERSHIP TYPE" was "Joint (Right of Survivorship)". The trial record contains statements for the account (which reflect the names of both spouses) for the period January 1, 2009, to July 31, 2010. The statements show that there was no activity in the account except: (1) a payment for a safety deposit box, (2) interest accruals, and (3) two deposits. The first deposit was a $4,061.30 check to petitioner from Philadelphia Park (a

**[*9]** gambling establishment) dated June 13, 2009. The second deposit was a $8,453.31 check to petitioner's wife from Prudential dated January 15, 2010.

Respondent introduced no Form 1099-INT or any other records related to Citizens Bank of Pennsylvania. The trial record lacks any documentary evidence regarding interest income from Citizens Bank of Pennsylvania.

At trial the Court asked petitioner whether it was true, as respondent alleged in his pretrial memorandum, that he received $121 of interest income from TD Bank. Petitioner testified: "No. My wife's money."

The Court also asked petitioner whether it was true, as respondent alleged in his pretrial memorandum, that he received $456 of interest income from Citizens Bank of Pennsylvania. Petitioner testified: "My wife's money, Your Honor. Same answer. I have no money." He later testified that: "All of our accounts are joint."

The evidence establishes that petitioner and his wife had a bank account at TD Bank and that they earned $121 of interest income from that bank account. The only remaining issue to resolve is whether petitioner should include the $121 of interest in his gross income. For tax purposes, a taxpayer is attributed the portion of income from jointly held property that the taxpayer is entitled to under State law. Haynes v. Commissioner, 7 B.T.A. 465 (1927); see also Bour v.

**[*10]** <u>Commissioner</u>, 23 T.C. 237, 240 (1954).  We therefore turn to Pennsylvania

law to determine the portion of the $121 of interest to which petitioner is entitled.

Title 20 of the Pennsylvania Consolidated Statutes and Consolidated Statutes

Annotated, 20 Pa. Stat. and Cons. Stat. Ann. secs. 6301-6306 (West 2005),

determines the property rights of parties to multiple-party accounts.  <u>Id.</u> sec. 6302.

A multiple-party account is defined as a joint account or a trust account.  <u>Id.</u> sec.

6301 ("Multiple-party account").  A joint account is an account payable on request

to "one or more of two or more parties", with or without any right of survivorship.

<u>Id.</u> ("Joint account").[4]  An account is defined as a contract of deposit of funds

between a depositor and a financial institution.  <u>Id.</u> ("Account").  Title 20 Pa. C.S.

sec. 6303(a) provides:  "A joint account belongs, during the lifetime of all parties,

to the parties in proportion to the net contributions by each to the sum on deposit,

unless there is clear and convincing evidence of a different intent."  A net

contribution by a party is generally defined as the sum of all deposits made by the

party less all withdrawals made by the party.  <u>Id.</u> sec. 6301 ("Net contribution").

The fact that both petitioner and his wife signed the signature card for the TD

Bank account, and the fact that the ownership type of the account was recorded to

---

[4]The right of survivorship is the right of each owner to automatically inherit the entire property upon the death of the other owner.  See <u>United States v. Craft</u>, 535 U.S. 274, 280 (2002).

**[*11]** be a joint account, imply that the amounts in the TD Bank account could be withdrawn by either petitioner or his wife. Therefore, the TD Bank account was a joint account. See id. To determine petitioner's proportional ownership of the TD Bank account during 2009, the year that the $121 of interest accrued, we need to know petitioner's total deposits, his total withdrawals, his wife's total deposits, and her total withdrawals, for the period up to and including 2009. See id. ("Net contribution"). The account was opened on March 18, 2006. We have deposit and withdrawal information for 2009, but not for any earlier period. Petitioner testified that the account was his wife's money. One might infer from this statement that only his wife made net contributions to the account and that he made no net contributions. However, we do not credit his testimony on this point because it is vague, uncorroborated, and self-serving. It is his burden to prove that his ownership portion in the account is less than the 100% assumed by respondent's position.[5] Because we cannot calculate his ownership portion in the

---

[5]Petitioner has not presented clear and convincing evidence that he and his wife intended to own their account at TD Bank other than in proportion to their respective net contributions. See 20 Pa. Stat. and Cons. Stat. Ann. sec. 6303(a) (West 2005). Pennsylvania law presumes that when property has been placed in an account in the names of a husband and wife, an estate by the entireties is created. In re Estate of Holmes, 200 A.2d 745, 747 (Pa. 1964). However, the creation of an estate by the entireties does not necessarily indicate that both parties intended that the account belong to both equally. Geerston v. McCrea, 37 Pa. D.

(continued...)

[*12] account, and because he has the burden of proof, we hold that he is the 100% owner of the account. It follows that he is entitled to 100% of the interest from the account.

The evidence also establishes that petitioner or his wife earned $456 of interest from Citizens Bank of Pennsylvania. During his testimony he stated that the bank account was his wife's money. We took this to be an implicit acknowledgment that the account existed and paid $456 of interest. Thus, on the basis of his testimony we find that he or his wife earned $456 of interest from a bank account at Citizens Bank of Pennsylvania. The evidence also establishes that the account at Citizens Bank of Pennsylvania was a joint account. Unlike the history of the account at TD Bank, the history of the account at the Citizens Bank of Pennsylvania reveals no records to suggest that it is a joint account. However, petitioner testified that all of his and his wife's financial accounts are joint accounts. In this regard, we find that his testimony is credible. We infer from this testimony that the amounts in the Citizens Bank of Pennsylvania account could be withdrawn by either him or his wife. Therefore the account is a joint account. See 20 Pa. Stat. and Cons. Stat. Ann. sec. 6301 ("Joint account"). As to determining

---

[5](...continued)
& C. 3d 583, 586 (Common Pleas Ct. Centre Cty. 1983).

[*13] his ownership portion of the Citizens Bank of Pennsylvania account, we know even less about the contributions to and withdrawals from the account than we do about the contributions to and withdrawals from the TD Bank account.[6] We therefore hold that he is a 100% owner of the account and that he is entitled to 100% of the interest from the account.

We conclude that petitioner must include in his gross income the $577 of interest earned on the two bank accounts.

3.      Dividend income

In the notice of deficiency respondent determined that petitioner had dividend income of $62. At trial respondent introduced a Form 1099-DIV from Morgan Stanley indicating that petitioner and his wife, through a brokerage account held in joint tenancy, earned $62.56 of dividend income. Respondent also introduced a brokerage statement from Morgan Stanley for the account (which also stated that the account was held in joint tenancy) showing that $62.56 in dividend income was earned on the account. The Court asked petitioner whether he received the dividend income. He initially testified: "It's my wife's money."

---

[6]As with the account at TD Bank, petitioner has not presented clear and convincing evidence that he and his wife intended to own their account at Citizens Bank of Pennsylvania other than in proportion to their respective net contributions. See 20 Pa. Stat. and Cons. Stat. Ann. sec. 6303(a).

**[*14]** But as he continued to testify, he acknowledged that the Morgan Stanley account was a joint account. "In that sense, it's both our money," he testified.

In Deutsch, Larrimore & Farnish, P.C. v. Johnson, 848 A.2d 137, 142 (Pa. 2004), the Supreme Court of Pennsylvania held that a brokerage account is an account under 20 Pa. Stat. and Cons. Stat. Ann. sec. 6303(a). We discern no relevant distinction between the brokerage account considered in Deutsch and the Morgan Stanley account held by petitioner and his wife. Therefore we conclude that the Morgan Stanley account is an account under 20 Pa. Stat. and Cons. Stat. Ann. sec. 6303(a).

The brokerage statements for the account bear the names of both petitioner and his wife. They state the account was held in joint tenancy. We infer that either petitioner or his wife could have withdrawn money from the brokerage account. Therefore it is a joint account. See id. sec. 6301 ("Joint account").

As to petitioner's ownership portion of the Morgan Stanley account, we cannot calculate his or his wife's net contributions. The record contains statements for the account only for the year 2009, not for any earlier period. Furthermore, the statements do not show that any deposits or withdrawals were made in 2009. And petitioner's testimony that the account is his wife's money is not credible. We therefore hold that he has failed to prove that his ownership

[*15] portion is less than the 100% assumed by respondent's position.[7] We hold that he is the 100% owner of the Morgan Stanley account and that he is entitled to 100% of the dividend income from the account. Therefore petitioner must include in his income $62 of dividends.

4.    Capital gain income

In the notice of deficiency respondent determined that petitioner had capital gain income of $525. A Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, from Morgan Stanley reports that petitioner and his wife had gross proceeds from exchanges of $525.14. The Form 1099-B relates to the same account that produced the dividend income, a joint account about which there is insufficient evidence to determine the respective net contributions of petitioner and his wife. For reasons given supra part 3, we hold that petitioner is entitled to 100% of the gross proceeds from the account. Therefore, he must include in his income $525 of capital gain income.[8]

---

[7]Petitioner has not presented clear and convincing evidence that he and his wife intended to own their Morgan Stanley brokerage account other than in proportion to their respective net contributions. See 20 Pa. Stat. and Cons. Stat. Ann. sec. 6303(a).

[8]The gain from exchange of property is equal to the amount realized minus the taxpayer's adjusted basis. Sec. 1001(a). Petitioner did not assert that he and his wife had any adjusted basis in the property that was exchanged. A brokerage

(continued...)

**[\*16]** 5.      <u>Gambling income</u>

Gross income includes all income from whatever source derived, including gambling.  Sec. 61; <u>McClanahan v. United States</u>, 292 F.2d 630, 631-632 (5th Cir. 1961).  Gross income from a wagering transaction is generally calculated by subtracting the bets placed to produce the winnings as a preliminary computation in determining gross income.  <u>See</u> <u>Lutz v. Commissioner</u>, T.C. Memo. 2002-89, slip op. at 10-11.

a.      <u>Respondent's pretrial position</u>

In the notice of deficiency respondent determined that petitioner had gambling winnings of $63,855.  The notice of deficiency did not reveal how the $63,855 was calculated or from what evidence it was derived.  In his pretrial memorandum respondent asserted that during 2009 petitioner received "wagering income in the amounts of $1,265.00, $61,722.00, and $868.00 from the New York Racing Association, Parx Casino & Racing (formerly Philadelphia Park Racetrack & Casino), and Melbourne Greyhound Park L.L.C. respectively."  (The sum of the three numbers in the pretrial memorandum, $1,265 + $61,722 + $868, is $63,855, the gambling winnings determined in the notice of deficiency.)  Respondent

---

[8](...continued)
statement stated that the adjusted basis in the property was zero.

[**\*17**] asserted in his pretrial memorandum that he was entitled to use third-party information to determine petitioner's income.

b.     Documentary evidence

i.     Philadelphia Park

The trial record contains Forms W-2G issued by Philadelphia Park, a gambling establishment. The table below summarizes the dollar amounts and dates on these Forms W-2G:

| Date won | Date cashed | Gross winnings | Federal income tax withheld | Net winnings | Amount of bet handwritten on form by petitioner |
|---|---|---|---|---|---|
| 1/10/09 | 1/10/09 | $1,296.76 | -0- | $1,296.76 | [1]$518.40 |
| 1/10/09 | 1/10/09 | 1,051.44 | -0- | 1,051.44 | ([1]) |
| 1/18/09 | 1/18/09 | 1,407.06 | -0- | 1,407.06 | Obscured |
| 1/24/09 | 1/24/09 | 953.47 | -0- | 953.47 | 336.00 |
| 1/24/09 | 1/24/09 | 4,722.54 | -0- | 4,722.54 | 403.20 |
| 2/7/09 | 2/7/09 | 1,329.38 | -0- | 1,329.38 | 504.00 |
| 2/7/09 | 2/9/09 | 954.62 | -0- | 954.62 | 616.00 |
| 2/28/09 | 2/28/09 | 602.52 | -0- | 602.52 | 302.40 |
| 3/7/09 | 3/7/09 | 1,346.30 | -0- | 1,346.30 | 352.80 |
| 2/28/09 | 3/7/09 | 629.60 | -0- | 629.60 | 432.00 |
| 3/14/09 | 3/14/09 | 847.80 | -0- | 847.80 | Obscured |
| 3/7/09 | 3/14/09 | 1,059.54 | -0- | 1,059.54 | 648.00 |
| 3/14/09 | 3/16/09 | 4,918.94 | -0- | 4,918.94 | 352.80 |
| 4/4/09 | 4/4/09 | 861.82 | -0- | 861.82 | 126.00 |
| 4/4/09 | 4/11/09 | 1,937.19 | -0- | 1,937.19 | 504.00 |
| 4/11/09 | 4/11/09 | 721.26 | -0- | 721.26 | 403.20 |
| 4/25/09 | 4/25/09 | 2,558.59 | -0- | 2,558.59 | 504.00 |
| 6/13/09 | 6/13/09 | 5,441.30 | $1,360 | 4,081.30 | 294.00 |

[*18]

| | | | | | |
|---|---|---|---|---|---|
| 6/20/09 | 6/27/09 | 705.70 | -0- | 705.70 | 252.00 |
| 7/4/09 | 7/4/09 | 1,317.60 | -0- | 1,317.60 | 360.00 |
| 7/19/09 | 7/19/09 | 708.60 | -0- | 708.60 | 518.40 |
| 8/15/09 | 8/15/09 | 2,312.40 | -0- | 2,312.40 | 363.00 |
| 8/22/09 | 8/22/09 | 1,256.05 | -0- | 1,256.05 | 216.00 |
| 8/29/09 | 8/29/09 | 4,273.00 | -0- | 4,273.00 | 450.00 |
| 8/30/09 | 8/30/09 | 1,146.93 | -0- | 1,146.93 | 403.20 |
| 9/5/09 | 9/5/09 | 1,123.46 | -0- | 1,123.46 | 0.00 |
| 9/7/09 | 9/7/09 | 816.20 | -0- | 816.20 | 352.80 |
| 9/12/09 | 9/14/09 | 6,112.93 | 1,528 | 4,584.93 | 648.00 |
| 9/19/09 | 9/19/09 | 705.98 | -0- | 705.98 | 504.00 |
| 9/19/09 | 9/19/09 | 1,185.73 | -0- | 1,185.73 | 504.00 |
| 9/26/09 | 9/26/09 | 931.50 | -0- | 931.50 | 313.60 |
| 10/3/09 | 10/3/09 | 1,653.11 | -0- | 1,653.11 | 504.00 |
| 10/10/09 | 10/10/09 | 683.37 | -0- | 683.37 | 201.60 |
| 10/23/09 | 10/23/09 | 871.46 | -0- | 871.46 | 235.20 |
| 11/14/09 | 11/14/09 | 801.43 | -0- | 801.43 | 302.40 |
| 11/6/09 | 11/14/09 | 735.80 | -0- | 735.80 | 392.00 |
| 12/12/09 | 12/12/09 | 1,759.60 | -0- | 1,759.60 | 504.00 |
| Total | | 61,740.98 | 2,888 | 58,852.98 | [2]13,321.00 |

[1]This $518.40 amount appears intended to cover both this $1,296.76 winning and the $1,054.44 winning below.

[2]The $13,321.00 total does not include obscured amounts. Respondent's brief puts the same total at $13,270.

The gross winnings shown on the Forms W-2G from Philadelphia Park are $61,740.98, slightly greater than the $61,722 that respondent referred to in his pretrial memorandum as the gross winnings at Philadelphia Park.

ii.     New York Racing Association

The trial record contains no documentary evidence regarding petitioner's gambling activity at New York Racing Association.

**[\*19]**     iii.     <u>Melbourne Greyhound Park L.L.C.</u>

The trial record contains one Form W-2G issued by Melbourne Greyhound Park L.L.C. This form has a "date won" of February 14, 2009, gross winnings of $868, and Federal income tax withheld of zero. There is no place on the form for the date cashed or the net winnings. No handwritten notation for the amount of the bet appears on the form.

c.     <u>Testimony</u>

i.     <u>Philadelphia Park</u>

As explained above, the Forms W-2G issued by Philadelphia Park include handwritten notations of the amounts petitioner bet. He testified that before Philadelphia Park sent the Forms W-2G to respondent, Philadelphia Park allowed him to write the amounts of his bets on the forms. We find his testimony on this point credible. Thus, the Forms W-2G respondent received (and which appear in the trial record) showed the amounts that petitioner claimed he bet. The total bets written on the Forms W-2G, not including two forms on which the amount is obscured, is $13,321.

ii.     <u>New York Racing Association</u>

The Court asked petitioner whether it was true that, as respondent alleged in his pretrial memorandum, petitioner had wagering income of $1,265 from New

[*20] York Racing Association.  He testified that he did not know because "[t]hey" had sent him "a whole bunch of stuff and conveniently forgot to take off the bet, which was clearly marked on the * * * 1099 I get."

### iii.    Melbourne Greyhound Park

The Court asked petitioner whether it was true that, as respondent alleged in his pretrial memorandum, he had wagering income of $868 from Melbourne Greyhound Park.  He testified that he had gambled at Melbourne Greyhound Park. He did not challenge respondent's position about the amount of his gambling income from Melbourne Greyhound Park.

### d.    Respondent's posttrial brief

In his posttrial brief respondent concedes that the amounts petitioner wrote on Philadelphia Park's Forms W-2G as his bets should offset the gambling winnings from Philadelphia Park in calculating petitioner's gross income. Respondent asserts that the amounts of bets recorded on the Forms W-2G total $13,270.  Respondent acknowledges that the gross winnings from Philadelphia Park reflected on the Forms W-2G before the reduction for the amount of the bets are $61,741, not the $61,722 alleged in respondent's pretrial memorandum. Despite proving this extra $19 of gambling winnings from Philadelphia Park, respondent continues to assert in his brief that the original $63,855 gambling-

**[*21]** related adjustment in the notice of deficiency is correct (before accounting for bets). This assertion is made in the eighth finding of fact requested by respondent, which is: "Petitioner had unreported wagering income in the amount of $50,585.00 for the taxable year 2009." Arithmetically, $50,585 equals $63,855 (the original amount of wagering income determined in the notice of deficiency) minus $13,270 (the amount of the bets, according to respondent). Although there are inconsistent calculations later in the brief, see Resp't opening br. at 17-18, we view respondent as having articulated the view that before adjustment for bets, petitioner's gross winnings from all three gambling establishments are $63,855. This $63,855 position corresponds to petitioner's gross winnings from Philadelphia Park being $61,722, before adjustment for bets. This is because $63,855 = $1,265 (New York Racing Association) + $61,722 (Philadelphia Park) + $868 (Melbourne Greyhound Park). We interpret respondent's position to be that the preadjustment gross winnings from Philadelphia Park is $61,722. No other position is clearly articulated by him.

e.   Analysis

Respondent alleges petitioner received gambling income from three separate gambling establishments: Philadelphia Park, New York Racing Association, and

[*22] Melbourne Greyhound Park.  We examine each of the three alleged sources of gambling income.

i.      Philadelphia Park

The first alleged source of gambling income is Philadelphia Park.  For this source of gambling income, the trial record contains copies of the Forms W-2G showing the amounts of petitioner's winnings.  Petitioner's testimony acknowledged that he gambled at Philadelphia Park.  And he did not raise any legitimate question about the accuracy of the gross winnings amounts reflected on those forms.  See sec. 6201(d) (providing that if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return by a third party (such as a Form W-2G), the Secretary of the Treasury (respondent's superior, who has delegated his authority to respondent) has the burden of producing reasonable and probative information concerning the deficiency in addition to such information return).  Rather, petitioner argued that the amount of gross winnings reflected on those forms, which is $61,740.98, should be reduced by the amounts of bets he wrote on the forms.  Respondent concedes that the amounts should be so reduced.  We hold that petitioner's gambling winnings from Philadelphia Park should be reduced by $13,321, the total of the bets petitioner wrote on the Forms W-2G.  We consider respondent's position in his posttrial

[*23] brief to be that before the reduction for bets the gross winnings for Philadelphia Park are $61,722. See infra part 5.d. This position is supported by the evidence that the amount is at least $61,722. Therefore we sustain the position. We hold that petitioner's gambling winnings from Philadelphia Park are $61,722 minus $13,321, or $48,401.

ii.    New York Racing Association

The second alleged source of gambling income is New York Racing Association. Respondent alleged in his pretrial memorandum that petitioner earned $1,265 in gambling income from this source and suggested that this amount of income was recorded in an information return from New York Racing Association. However, respondent did not offer the information return into evidence. The Court asked petitioner whether respondent's allegation was correct. He testified that he did not know because the information return failed to account for the amount he bet. Although his answer was ambiguous, we interpret his answer to be that New York Racing Association likely did issue a Form W-2G and that the form likely did reflect that he won $1,265--an amount calculated without reduction by the amount he bet. As suggested by his testimony that "[t]hey conveniently forgot to take off his bet", petitioner's argument with the use of the Form W-2G from New York Racing Association is that the $1,265 did not reflect

[*24] the amount that he bet. He is therefore not suggesting that the Form W-2G upon which the $1,265 amount is based is incorrect. See sec. 6201(d). Those filling out a Form W-2G are instructed to record the amount of the payment, not the payment minus the bet.[9] Instead of an error on the Form W-2G, petitioner is suggesting that the information reported on the Form W-2G must be supplemented by additional information--the amount of his bet--to form a conclusion about his gross income. We therefore consider this remaining question of how to take into account whatever amount he bet to win $1,265. The first principle we bear in mind is that it is a taxpayer's obligation to keep records of his or her income. Sec. 6001. In certain situations we may estimate the amount of a reduction in income even if the taxpayer fails to keep records. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, even in those situations we must have a basis for making such an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). We have no basis for estimating how much petitioner bet to win the $1,265. We therefore hold that petitioner's income from New York Racing Association is $1,265.

---

[9]The instructions are found on the Internet at https://www.irs.gov/pub/irs-prior/iw2g--2009.pdf.

**[*25]**      iii.      <u>Melbourne Greyhound Park</u>

The third alleged source of gambling income is Melbourne Greyhound Park. Petitioner acknowledged in his testimony that he gambled at the Park. He did not raise any questions about the accuracy of the Form W-2G reflecting that he had gross winnings of $868. We hold that his income from Melbourne Greyhound Park L.L.C. is $868.

f.      <u>Summary</u>

In summary, we hold that petitioner earned gambling income of $50,534: $48,401 (from Philadelphia Park) + $1,265 (from New York Racing Association) + $868 (from Melbourne Greyhound Park).

6.      <u>Section 6651(a)(1) addition to tax for failure to timely file a tax return</u>

Respondent determined that petitioner is liable for the section 6651(a)(1) addition to tax for the 2009 tax year. Section 6651(a)(1) imposes an addition to tax for the failure to file a tax return by its filing deadline unless the taxpayer can establish that the failure to file is due to reasonable cause and not due to willful neglect.

The Commissioner bears the burden of production for the section 6651(a)(1) addition to tax. <u>See</u> sec. 7491(c). He satisfies his burden by producing sufficient evidence to establish that the taxpayer failed to timely file a required Federal

[*26] income tax return.  See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Higbee v. Commissioner, 116 T.C. 438, 447 (2001).  A substitute for return does not count as a return for purposes of the section 6651(a)(1) addition to tax.  Sec. 6651(g)(1).

Section 6012 requires every individual who has gross income over a certain amount to file an income tax return.  Petitioner's gross income is well above the relevant amount.  He was therefore required to file a return for 2009.  He admitted that he did not.  This is sufficient to satisfy respondent's burden of producing evidence that imposing the addition to tax under section 6651(a)(1) is appropriate for 2009.  See  Wheeler v. Commissioner, 127 T.C. at 207-208; Higbee v. Commissioner, 116 T.C. at 447.

Once the Commissioner has satisfied his burden of production, the burden of proof is on the taxpayer to show that imposing the addition to tax is improper, for example, because the failure to file the return was due to reasonable cause and not willful neglect.  See Wheeler v. Commissioner, 127 T.C. at 208; Higbee v. Commissioner, 116 T.C. at 447-448.  Therefore, petitioner is liable for the section 6651(a)(1) addition to tax for the 2009 tax year unless his evidence is sufficient to persuade the Court that he had reasonable cause for his failure to file his return

[*27] and that his failure to file was not due to willful neglect. See sec.

6651(a)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

Reasonable cause excusing a failure to timely file exists if the taxpayer

exercised ordinary business care and prudence but nevertheless was unable to file

the return by the deadline. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Willful neglect means a conscious, intentional failure or reckless indifference.

United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioner testified that he did

not file his 2009 return because he had received an incorrect Form 1099 for a prior

tax year, that he had asked respondent what he should do about it, and that

respondent had never replied to his request. If petitioner had thought one of his

information returns was wrong, even for the year at issue, 2009, he could have

filed his annual tax return using the correct information. We find that petitioner

did not have reasonable cause for his failure to file his 2009 income tax return.

Accordingly, we hold that petitioner is liable for the section 6651(a)(1) addition to

tax.

The section 6651(a)(1) addition to tax is 5% of the correct amount of tax,

plus another 5% of the correct amount of tax for each month or fraction of a month

the failure to file continues, not to exceed 25% in the aggregate. Sec. 6651(a)(1),

(b)(1). The correct amount of tax, an amount that forms the computational core of

[*28] the section 6651(a)(1) addition to tax, is reduced by timely payments and any credits against the tax that can be claimed on the return, including amounts withheld for Federal income tax. Secs. 6651(b)(1), 31(a). The correct amount of tax resulting from the conclusions in this opinion will be computed under Rule 155. In his calculations in the notice of deficiency issued to petitioner, respondent reduced the correct amount of tax by the $2,888 withheld. As discussed infra part 7, petitioner asserts that he made $39,750 of payments but we hold that the only payments and credits against petitioner's 2009 tax liability are the $2,888 in withholdings.

7. Section 6651(a)(2) addition to tax for failure to timely pay tax

Respondent determined that petitioner is liable for the section 6651(a)(2) addition to tax for the 2009 tax year. Section 6651(a)(2) provides that if a taxpayer fails to pay the amount shown as tax on a return on or before the due date for payment, and unless the failure is due to reasonable cause and not due to willful neglect, there is added to the amount shown as tax on the return 0.5% of the amount, and an additional 0.5% for each additional month or fraction of a month during which the failure to pay continues, not exceeding 25% in the

**[\*29]** aggregate.[10]  A return for this purpose includes either a return filed by the

taxpayer or a substitute for return prepared by the Commissioner under section

6020(b).  Sec. 6651(g)(2); <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 170 (2003),

<u>aff'd without published opinion</u>, 94 A.F.T.R. 2d (RIA) 2004-5490 (3d Cir. 2004).

The payment of tax is generally due on or before the unextended due date for

filing the return.  Sec. 6151(a).  The return for an individual is due April 15.  Sec.

6072(a).

Section 6651(b)(2) provides that the amount of tax shown on the return is,

for purposes of computing the addition for any month, reduced by the amount of

any part of the tax paid on or before the beginning of the month and by the amount

of any credit against the tax which may be claimed on the return.  Section 31(a)

provides that any amount withheld for income tax counts as a credit to the

recipient of income for the tax year in which the withholding was made.

---

[10]The amount of the addition to tax calculated in the notice of deficiency
was $1,153.57.  The notice stated that this was the amount that had accrued as of
the date of the notice of deficiency, April 23, 2012.  The notice of deficiency
stated that the "penalty rate" used for calculating the addition to tax was 11.5%.
Conceptually the penalty rate is the product of 0.5% and the number of months for
which the taxpayer failed to pay.  For petitioner, then, 11.5% was the product of
0.5% and 23 months, because 11.5% = (0.5%) × (23 months).

[*30] Section 6651(c)(2) provides that if the correct tax is less than the amount shown as tax on the return, then both section 6651(a)(2) and (b)(2) are applied by substituting this lower amount.

The Commissioner has the burden of producing evidence that the addition to tax under section 6651(a)(2) is appropriate. Sec. 7491(c). Where the taxpayer did not file a return, the Commissioner can satisfy his burden of production with evidence that he filed a substitute for return and that the taxpayer failed to pay the tax. Wheeler v. Commissioner, 127 T.C. at 210.

Petitioner did not file a return for the 2009 tax year. However, respondent prepared a substitute for return.[11] The substitute for return qualifies as a return for purposes of section 6651(a)(2). See sec. 6651(g)(2); Cabirac v. Commissioner, 120 T.C. at 170.

The amount shown as tax on the substitute for return prepared by respondent--before accounting for payments and credits and before the substitution required by section 6651(c)(2)--was $12,919. The substitute for

_____

[11]Respondent introduced evidence that he filed a substitute for return meeting the requirements for such a return under sec. 6020(b). A document or set of documents signed by an authorized official or employee of respondent's agency (the Internal Revenue Service) is a return for purposes of sec. 6020(b) if the document(s): (1) identifies the taxpayer by name and taxpayer identification number; (2) contains sufficient information to compute the taxpayer's tax liability; and (3) purports to be a return. Sec. 301.6020-1(b)(2), Proced. & Admin. Regs.

[*31] return reflects that petitioner is entitled to credits of $2,888 against his 2009 tax liability.

The correct tax for 2009 is less than $12,919 because respondent has conceded that petitioner's gambling income is less than the gambling income reflected on the substitute for return. Accordingly, under section 6651(c)(2), it is the correct tax, not the actual amount shown as tax on the substitute for return, that is used to calculate the section 6651(a)(2) addition to tax. The correct amount of tax will be determined under Rule 155.

The next question to consider is whether petitioner paid the amount of tax shown on the return (after that amount is substituted with the lower amount of correct tax pursuant to section 6651(c)(2)). The parties have conflicting views on the amounts of payments and credits to which petitioner is entitled. Petitioner testified that he made the following payments to respondent:

[*32]

| Date | Amount |
|---|---|
| June 16, 2008 | $10,000 |
| July 7, 2008 | 10,000 |
| Jan. 6, 2008 | 500 |
| Apr. 13, 2009 | 500 |
| June 10, 2009 | 500 |
| Dec. 11, 2006 | 2000 |
| Feb. 21, 2007 | 1,500 |
| May 8, 2007 | 750 |
| June 29, 2007 | 750 |
| Sept. 8, 2007 | 750 |
| May 2, 2008 | 12,500 |
| Total | $39,750 |

However, petitioner did not introduce any evidence, beyond his testimony, that he made the payments.[12] He introduced no checks written to respondent. He introduced no letters directing respondent how to apply the payments. And when the Court asked petitioner for which tax years the payments described in the table should be applied, he could not say. Respondent introduced his own records showing that petitioner made no payments against his 2009 tax liability. We find that petitioner made no payments against his 2009 liability.

---

[12]Petitioner moved for the admission of a list containing the dates and payment amounts into evidence. The Court did not admit the list. For one thing, petitioner failed to demonstrate the list was not barred by the antihearsay rule of Fed. R. Evid. 802.

**[*33]** We conclude that respondent has met his burden of production under section 7491(c) that it is appropriate to impose the section 6651(a)(2) addition to tax.

Respondent does not bear the burden of proof for the "reasonable cause" exception to the section 6651(a)(2) addition to tax. See Higbee v. Commissioner, 116 T.C. at 446-447. Petitioner is required to come forward with evidence sufficient to persuade the Court that he had reasonable cause for his failure to pay the correct amount of tax for 2009 and that his failure to do so was not due to willful neglect. See id. Petitioner does not contend that his failure to pay the tax was due to reasonable cause and not due to willful neglect. Accordingly, we hold that petitioner is liable for the section 6651(a)(2) addition to tax for the 2009 tax year, subject to postopinion computations under Rule 155 of the correct amount of tax for 2009.[13]

8.    Section 6654(a) addition to tax for failure to pay estimated tax

Respondent determined petitioner is liable for the section 6654(a) addition to tax for the 2009 tax year. Section 6654(a) imposes an addition to tax on an

---

[13]We hold that petitioner is liable for both the sec. 6651(a)(1) addition to tax, see supra part 6, and the sec. 6651(a)(2) addition to tax for the 2009 tax year. The amount of the sec. 6651(a)(1) addition to tax must be reduced by the amount of the sec. 6651(a)(2) addition to tax for the months for which both additions to tax apply. Sec. 6651(c)(1).

**[\*34]** individual taxpayer who underpays one or more of the four installments of estimated tax. Sec. 6654(a), (b), and (c). Each of the four installments is equal to one-fourth of an amount referred to as the "required annual payment". Sec. 6654(d)(1)(A). The required annual payment is defined by section 6654(d)(1)(B) as the lesser of two amounts: (1) 90% of the tax shown on the return for the tax year (or, if no return is filed, 90% of the correct tax for such year), and (2) if the individual filed a return for the prior tax year, 100% of the tax shown on the prior year's return. Sec. 6654(d)(1)(B). A substitute for return is not a return for the purpose of computing either the first amount or the second amount. See Nino v. Commissioner, T.C. Memo. 2009-293, 98 T.C.M. (CCH) 621, 624 (2009) (nonprecedential authority assuming that substitute for return is not considered a return for purpose of computing the first and second amounts); Duma v. Commissioner, T.C. Memo. 2009-304, 98 T.C.M. (CCH) 661, 665 n.6 (2009) (nonprecedential authority stating that a substitute for return is not considered a return for purpose of computing the second amount). If the "required annual payment" is zero, then the taxpayer has no required installments. Sec. 6654(d)(1)(A). The due dates of the required installments for a calendar year taxpayer such as petitioner are April 15, June 15, and September 15 of the calendar year in question and January 15 of the following year. Sec. 6654(c)(2).

**[*35]** Thus, the due dates for the required installments for the 2009 tax year were April 15, June 15, and September 15, 2009, and January 15, 2010.

The section 6654(a) addition to tax is determined by applying the underpayment interest rate established under section 6621 to the amount of the underpayment for the period of the underpayment. Sec. 6654(a)(1). The amount of the underpayment is the excess of the required installment over the amount, if any, of the installment paid on or before the due date for the installment. Sec. 6654(b)(1). The period of the underpayment runs from the due date for the installment to the earlier of the 15th day of the 4th month following the close of the taxable year (i.e., April 15, 2010, for petitioner's 2009 tax year) or, for any portion of the underpayment, the date on which such portion is paid. Sec. 6654(b)(2).

For purposes of section 6654, income tax withholding credits are treated as payments of estimated tax. See sec. 6654(g)(1). The withheld amount for each tax year is treated as a payment of estimated tax for that year, and one-fourth of this amount is deemed as paid on each of the four estimated-tax required-installment due dates for that tax year, unless the taxpayer establishes the dates on which all amounts were actually withheld. See id.

**[*36]** Respondent bears the burden of production for the addition to tax determined under 6654(a). See sec. 7491(c). To satisfy his burden of production, he must produce evidence establishing that petitioner had a "required annual payment" as defined in section 6654(d)(1)(B). Wheeler v. Commissioner, 127 T.C. at 211-212.

The record shows that petitioner had a "required annual payment" for the 2009 tax year. A required annual payment is the lesser of two amounts. Respondent, in his notice of deficiency, calculated that the first amount was $12,919. According to the statutory formula, the first amount is 90% of the tax shown on the return for 2009 (or if no return is filed, 90% of the correct tax for such year). Sec. 6654(d)(1)(B). Petitioner did not file a return for 2009. The first amount is therefore 90% of his correct tax for 2009. See sec. 6654(d)(1)(B)(i). This amount will be determined in computations under Rule 155. The second amount to be compared in determining the amount of petitioner's "required annual payment" for 2009 is 100% of tax shown on petitioner's 2008 return, but only if he filed a return for 2008. See sec. 6654(d)(1)(B)(ii), (and flush language). He did not file a return for 2008. His "required annual payment" for 2009 is therefore 90% of his correct tax for 2009.

[*37] Each of the four required installments is one-fourth of the "required annual payment" amount. See sec. 6654(d)(1)(A). Petitioner had $2,888 of Federal income tax withheld from his gambling winnings in 2009. The dates of the Forms W-2G on which the withholdings were recorded were June 13, 2009 (for $1,360) and September 14, 2009 (for $1,528). However, neither respondent nor petitioner contends that the amount of the addition to tax should be computed using these dates as the payment dates as opposed to using the four deemed-payment dates as the payment dates. See sec. 6654(g)(1). Accordingly, one-fourth of $2,888, or $722, is deemed to be a payment of estimated tax made on each of the four due dates for the 2009 tax year. See sec. 6654(g)(1). These are the same deemed payment dates and amounts that were used in the notice of deficiency. Besides the $2,888 of withholding, petitioner made no other payments of estimated tax for 2009. See supra part 7. Respondent has satisfied his burden of producing evidence that imposing the section 6654(a) addition to tax is appropriate for the 2009 tax year if Rule 155 computations confirm that the $722 deemed payment is less than each required installment.

The section 6654(a) addition to tax is mandatory unless the taxpayer establishes that one of the exceptions listed in section 6654(e) applies. See Recklitis v. Commissioner, 91 T.C. 874, 913 (1988) (citing Grosshandler v.

[*38] <u>Commissioner</u>, 75 T.C. 1, 20-21 (1980)). There is no general exception to the section 6654(a) addition to tax relating to reasonable cause and lack of willful neglect. <u>See</u> <u>Grosshandler v. Commissioner</u>, 75 T.C. at 21 (citing <u>Estate of Ruben v. Commissioner</u>, 33 T.C. 1071, 1072 (1960)); <u>cf.</u> sec. 6654(e)(3)(B)(ii). Petitioner does not contend, nor does the record show, that any of the exceptions under section 6654(e) applies. Accordingly, we hold that petitioner is liable for the section 6654(a) addition to tax for the 2009 tax year, subject to computations under Rule 155.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.